UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | :   Case No. 2:18-cv-02612 |
| | : |
| HRA FOUNTAINS, LP, a Delaware limited partnership; | : |
| | : |
| SPIN PARTNERS, INC., a Kansas corporation; and | : |
| | : |
| WHOLE FOODS MARKET ROCKY MOUNTAIN/SOUTHWEST, L.P., a Texas limited partnership; | : |
| | : |
| Defendants. | : |

_____

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, HRA FOUNTAINS, LP, a Delaware limited partnership; SPIN PARTNERS, INC., a Kansas corporation; and WHOLE FOODS MARKET ROCKY MOUNTAIN/SOUTHWEST, L.P., a Texas limited partnership, (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.    Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.    Defendant HRA Fountains, LP's property, The Fountains shopping center, is

located at or near 6547 W. 119th Street, Overland Park, Kansas 66209, in Johnson County   ("The Fountains").

3.      The Defendant HRA Fountains, LP's property, The Fountains, is located in and does business within this judicial district.

4.      The Defendant Spin Partners, Inc. owns, leases, leases to, or operates a Spin Neapolitan Pizza restaurant in The Fountains ("Spin").

5.      The Defendant Whole Foods Rocky Mountain/Southwest, L.P. owns, lease, leases to, or operates a Whole Foods Market in The Fountains ("Whole Foods").

6.      Venue is proper in the District of Kansas, Kansas City Division because the situs of the Defendants' property, restaurant and store lie in this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.      Defendants each own, lease, lease to, or operate places of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.      Defendants are responsible for complying with the obligations of the ADA.

10.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

11.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who both

2

live in such area.

12.     The Plaintiff, Fred Nekouee, has visited, bought goods, and sought to avail himself of the goods and services at the Spin and Whole Foods on March 29, 2018 and on July 12, 2018 in The Fountains, which form the basis of this lawsuit, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships he visits, and to the home of his uncle and cousin he visits in the Kansas City area, and to the hotels he stays at in the Kansas City area.

13.     The Plaintiff also has visited the Kansas City area near The Fountains in September 2018.

14.     The Plaintiff has definite plans to return to the Kansas City area in December 2018.

15.      The Plaintiff enjoys pizza and likes to dine at medium-priced restaurants with fast service while he is traveling like Spin.

16.      The Plaintiff plans to return to dine at Spin in The Fountains, but is deterred from eating there until the barriers to access he encountered there are removed.

17.      The Plaintiff likes to bring back grocery items to his hotel while traveling, and he enjoys the goods at Whole Foods.

18.      The Plaintiff is deterred from returning to this Whole Foods in The Fountains until it is made accessible to him in his wheelchair.

19.      The Plaintiff plans to return to The Fountains on his upcoming visits to the Kansas City metropolitan area since it close to the hotels he stays at in such area.

20.      The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of

signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, and have impaired and denied him the full use of the men's and women's restrooms in Spin and Whole Foods, and have impaired and denied his access to the goods and services at Spin, Whole Foods, and The Fountains.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

23.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep cross slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

24.     On his visits to Spin and Whole Foods at The Fountains, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

25.     The Plaintiff encountered barriers to access in the men's and women's restrooms in Spin and Whole Foods.

26.     After encountering barriers to access in the men's restroom in Spin, the Plaintiff tried the women's restroom in Spin.

27.     After encountering barriers to access in the men's restroom in Whole Foods, the Plaintiff tried using the women's restroom in Whole Foods.

28.     The Plaintiff is deterred from visiting The Fountains, Spin, and Whole Foods even

though he enjoys their goods and services, because of the difficulties he will experience there until the property and places of public accommodation are made accessible to him in a wheelchair.

29.     The Plaintiff is deterred from visiting the places of public accommodation in The Fountains, even though it is close to the heavy equipment auction, heavy equipment dealerships, the home of his uncle and cousin in the Kansas City area, and to the hotels he stays at in such area, because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), and restrooms until the property is made accessible to him in a wheelchair.

30.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 36 of this Complaint.

31.     Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

32.     Fred Nekouee desires to visit The Fountains, Spin, and Whole Foods not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

33.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

34.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of

$500,000 or less).

35.    Preliminary inspections of The Fountains, Spin, and Whole Foods show that violations exist.

36.    The violations that the Plaintiff, Fred Nekouee, personally encountered or observed on his visit to The Fountains, Spin and Wholes Foods include, but are not limited to:

**PARKING AREA**

a.   In the parking lot, the parking space for disabled patrons in front of Whole Foods shown in the photographs below taken on March 29, 2018, has areas with an excessively steep running slope, as steep as about 1:5.5 (18.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope made it very difficult for the Plaintiff, a disabled individual who requires a wheelchair for mobility, to stay stable while loading and unloading from his vehicle. This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Whole Foods.





b. In the parking lot, the parking space for disabled patrons in front of Whole Foods shown in the photographs below has an area with an excessively steep running slope, as steep as about 1:21.7 (4.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle. The Plaintiff observed this steep slope. This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Whole Foods.





c.  In the parking lot, the next parking space for disabled patrons in front of Whole

Foods to the left of the parking space shown in the photographs in subparagraph (b) above,

has an excessively steep running slope, as steep as about 1:33.3 (3%), which slope is steeper

than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG

§ 502.4.   This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle.   The Plaintiff observed this steep slope.   This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Whole Foods.

d.   In the parking lot, the parking space for disabled patrons shown in the photographs in subparagraph (b) above in front of Whole Foods has an area with an excessively steep cross slope, as steep as about 1:14.3 (7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG  § 502.4.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair.   Such steep slope deters him and other disabled individuals who require a wheelchair for mobility from visiting Whole Foods.

e.   In the parking lot, the section of the parking space for disabled patrons with van access in front of Spin has an excessively steep running slope, as steep as about 1:15.6 (6.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair. Such a steep slope deters him and other disabled individuals who require a wheelchair for mobility from visiting Spin.

f.   In the parking lot, the change in elevation in the parking space for disabled patrons in front of Saint Luke's South Radiation Therapy is about 1.5 inches and greater than the maximum allowed change in level of 0.25 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   The Plaintiff observed this condition, which condition makes it difficult for a disabled individual who requires a wheelchair for mobility from

moving over this parking space.

g.    In the parking lot, there is a change of level in the access aisle for the parking space for disabled patrons in front of Whole Foods of about 1 inch and greater than the maximum allowed change in level of 0.25 of an inch, in violation of Federal Law 2010 ADAAG§§ 502.4 and 303.2.   The Plaintiff encountered this change in level, it made him unstable in his wheelchair, and he required assistance to move over it in his wheelchair.

h.    In the parking lot, there is a change of level in the parking space for disabled patrons in front of Whole Foods of about 0.75 of an inch and greater than the maximum allowed change of level of 0.25 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.    The Plaintiff encountered this change in level, it made him unstable in his wheelchair, and he required assistance to move over it in his wheelchair.

i.    In the parking lot, the running slope of the middle section of the access aisle serving the disabled parking spaces in front of Saint Luke's South Radiation Therapy is as steep as about 1:18.5 (5.4%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition.

j.    In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of Spin is as steep as about 1:14.9 (6.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope, and it made him unstable in his wheelchair.

k.    In the parking lot, the running slope of the back section of the access aisle serving the disabled parking spaces in front of Whole Foods is as steep as about 1:22.2 (4.5%),

which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope and it made him unstable in his wheelchair.

l.   The running slope of the walking surface towards Saint Luke's South Radiation Therapy is as steep as about 1:11.6 (8.6%), which slope is steeper than the maximum allowed slope of 1:20 (5%), and this area of the walking surface does not have any handrails, in violation of Federal Law 2010, ADAAG §§ 403.3 and 405.8.   The Plaintiff observed these conditions, and they deter him from visiting The Fountains.

m.   The running slope of the walking surface in front of Designer Tan is as steep as about 1:13.3 (7.5%), which slope is steeper than the maximum allowed slope of 1:20 (5%), and this area of the walking surface does not have any handrails, in violation of Federal Law 2010, ADAAG §§ 403.3 and 405.8.   The Plaintiff observed these conditions, and they deter him from visiting The Fountains.

n.   Handrails are not provided around the ramp in front of Whole Foods where the slope is as steep as about 6.7% in a 10 foot length, a ramp run rise of about 8 inches and greater than the maximum run rise of 6 inches, in violation of Federal law 2010, ADAAG §§ 405.8 and 505.   The Plaintiff encountered this slope of the ramp while moving in his wheelchair, and it made him unstable in his wheelchair.

o.   The cross slope of the walking surface towards Saint Luke's South Radiation Therapy is as steep as about 1:24.4 (4.1%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from visiting The Fountains.

p.   The cross slope of the walking surface in front of Designer Tan is as steep as about

1:23.3 (4.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this steep slope, and it deters him from visiting The Fountains.

q.    The cross slope of the walking surface in front of Whole Foods is as steep as about 1:29.4 (3.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff, a disabled individual who requires a wheelchair for mobility, encountered this steep cross slope while moving in his wheelchair, and it made him unstable in his wheelchair.

r.    The slope of the accessibility curb ramp sides or flares in front of Spin are as steep as about 1:4.1 (24.3%), which slope is dangerously steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this condition while moving in his wheelchair, and he required assistance to prevent his wheelchair from overturning.

s.    The slope of the surface within the entrance door required maneuvering space of 60 inches in front of Designer Tan is as steep as about 1:23.3 (4.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   The Plaintiff observed this slope, and it deters him from visiting The Fountains.

**SPIN ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA**

t.    The force needed to open the entrance door to Spin is about 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening the entrance door to Spin, and he

required assistance to open this door.

u.   The sanitizer dispenser in Spin is about 53.5 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal law 2010, ADAAG § 308.2.2.   In his wheelchair, the Plaintiff could not reach the dispenser to the sanitizer.

**MEN'S RESTROOM IN SPIN**

v.   The force needed to open the entrance door to the men's restroom in Spin is about 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door to the men's restroom in Spin as a result of the force needed to open this door, and he required assistance to open this door.

w.   As shown in the photograph below, the men's restroom in Spin does not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG § 703.7.2.1.   The Plaintiff observed this condition, and it deters him from visiting Spin.



x.    In the men's restroom in Spin, the door pull side maneuvering clearance in a front

approach beyond the latch and parallel to the doorway is less than the minimum required

clearance of 18 inches since a trash can is located in this space, in violation of Federal Law

2010, ADAAG § 404.2.4.   This lack of clearance due to the location of the trash can made

it difficult for the Plaintiff to maneuver his wheelchair in this space.

y.   In the men's restroom in Spin, the entrance door to the restroom push side maneuvering clearance in a latch approach perpendicular to the doorway with latch and closer is about 41 inches, which clearance is less than the required minimum clearance of 48 inches where the wall clearance beyond the hinge parallel to the doorway is at least 24 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff encountered this condition, and he required assistance to enter the men's restroom in Spin.

z.   In the men's restroom in Spin, the leading edge of the paper towel dispenser protrudes about 9 inches horizontally into the circulation path, and it is located between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion is greater than the maximum allowed horizontal protrusion of 4 inches (100 mm) in such area, in violation of Federal Law 2010, ADAAG § 307.2.   The Plaintiff encountered this condition while moving in his wheelchair, and he risked head injury.

aa.   In the men's restroom in Spin, the toilet paper dispenser centerline is about 11 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010 ADAAG § 604.7.   Due to this condition, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

bb.   In the men's restroom in Spin, the distance from the toilet centerline to the side wall is about 19.5 inches and not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2. The Plaintiff encountered this condition, and it made it difficult for him to reach the side

wall grab bar.

cc.  In the men's restroom in Spin, the paper towel dispenser outlet is about 54 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.  In his wheelchair, the Plaintiff tried but could not reach the outlet to the paper towel dispenser.

dd.  In the men's restroom in Spin, the coat hook is installed at about 65 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.  In his wheelchair, the Plaintiff could not reach this coat hook.

**SPIN WOMEN'S RESTROOM**

ee.  As shown in the photograph below, the women's restroom in Spin does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.  The Plaintiff observed this condition, and it deters him from visiting Spin.



ff.    The Spin women's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum clearance of 18 inches since such clearance space is reduced by a trash can, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff encountered this trash can, and he required assistance to enter this women's restroom.

gg.    In the women's restroom in Spin, the toilet paper dispenser centerline is about 5

inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010 ADAAG § 604.7.   Due to this condition, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

hh.   In the women's restroom in Spin, the paper towel dispenser outlet is about 60 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   In his wheelchair, the Plaintiff could not reach the outlet to this paper towel dispenser.

ii.   In the women's restroom in Spin, the bottom edge of the mirror's reflecting surface is about 47 inches above the finish floor, which height is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal law 2010, ADAAG § 603.3.   In his wheelchair, the Plaintiff could not see his full face in this mirror.

jj.    In the women's restroom in Spin, the light switch is about 51 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches (1220 mm), in violation of Federal Law 2010, ADAAAG § 308.2.1.   In his wheelchair, the Plaintiff tried but could not reach this light switch.

kk.  In the women's restroom in Spin, the door latch is installed at about 52 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 404.2.7.   From his wheelchair, the Plaintiff could not reach this door latch.

**MEN'S RESTROOM IN WHOLE FOODS**

ll.   In the men's restroom in Whole Foods, the restroom door pull side maneuvering

18

clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff encountered this trash bin, and he required assistance to enter the restroom.

mm.      In the men's restroom in Whole Foods, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, and the latch provided requires tight grasping and cannot be opened by a loose grip or closed fist, in violation of Federal Law 2010 ADAAG §§ 309.4, 404.2.7 and 604.8.1.2.   As a result of these conditions, the Plaintiff could not fully close the door to this accessible toilet compartment.

nn.   In the men's restroom in Whole Foods, the leading edge of the paper towel dispenser protrudes about 10 inches horizontally into the circulation path, and it is located between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion is greater than the maximum allowed horizontal protrusion of 4 inches (100 mm) in such area, in violation of Federal Law 2010, ADAAG § 307.2.   The Plaintiff encountered this condition while moving in his wheelchair, and he risked head injury from this horizonal protrusion.

oo.   In the men's restroom in Whole Foods, the space between the side wall grab bar and the toilet paper dispenser above it is about 5 inches and less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.    The Plaintiff encountered this condition, and as a result of it, he had difficulty transferring from his wheelchair to sit on the toilet.

pp.   In the men's restroom in Whole Foods, the paper towel dispenser handle is about 55 inches above the finish floor, which height is higher than the maximum allowed height

of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1. From his wheelchair, the Plaintiff tried but could not reach the handle to the paper towel dispenser.

qq.   In the men's restroom in Whole Foods, the toilet seat cover dispenser outlet is about 62 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   Due to its height above the finish floor, the Plaintiff tried but could not reach this outlet to the toilet seat cover dispenser.

**WOMEN'S RESTROOM IN WHOLE FOODS**

rr.   In the women's restroom in Whole Foods, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum clearance of 18 inches since a trash bin is located in such clearance space, in violation of Federal Law 2010, ADAAG § 402.4.   In his wheelchair, the Plaintiff encountered this trash bin, and as a result of the trash bin, he required assistance to enter the women's restroom.

ss.   In the women's restroom in Whole Foods, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   As a result of this condition, the Plaintiff could not fully close the compartment door.

tt.   In the women's restroom in Whole Foods, the space between the side wall grab bar and the toilet paper dispenser above it is about 4 inches and less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3. The Plaintiff encountered this condition, and as a result of it, he had difficulty transferring

from his wheelchair to sit on the toilet.

uu.   In the women's restroom in Whole Foods, the paper towel dispenser handle is about 57 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   From his wheelchair, the Plaintiff tried but could not reach the handle to the paper towel dispenser.

vv.   In the women's restroom in Whole Foods, the toilet seat cover dispenser outlet is about 57 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   Due to its height above the finish floor, the Plaintiff tried but could not reach this outlet to the toilet seat cover dispenser.

37.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

38.   The discriminatory violations described in paragraph 36 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

39.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and

damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The

individual Plaintiff, and all others similarly situated will continue to suffer such discrimination,

injury and damage without the immediate relief provided by the ADA as requested herein.

40.      Defendants have discriminated against the individual by denying individuals access

to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of their places of public accommodation or commercial facilities in violation of

42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

41.      Furthermore, the Defendants continue to discriminate against the Plaintiff, and all

those similarly situated, by failing to make reasonable modifications in policies, practices or

procedures, when such modifications are necessary to afford all offered goods, services, facilities,

privileges, advantages or accommodations to individuals with disabilities; and by failing to take

such efforts that may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence

of auxiliary aids and services.

42.      Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is

warranted.

43.      Plaintiff has retained the undersigned counsel and is entitled to recover attorney's

fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

44.      Defendants are required to remove the existing architectural barriers to the

physically disabled when such removal is readily achievable for its place of public accommodation

that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been

an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

45.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

46.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Spin, Whole Foods, and The Fountains and adjacent parking areas and walking surfaces at the The Fountains, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

47.   Millions of Americans require the use of a wheelchair for mobility.

48.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

49.   Removing existing architectural barriers to access under Title III of the ADA will be good for the business of Spin, Whole Foods, and The Fountains.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to require the Defendants to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*